UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANTHONY SHERROD,

                    Petitioner,

      -vs-

DALE A. ARTUS, Superintendent,

                    Respondent.

**No. 6:13-CV-06539 (MAT)**
**DECISION AND ORDER**

---

## I. Introduction

Proceeding *pro se*, Anthony Sherrod ("petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that he is being detained in respondent's custody in violation of his federal constitutional rights. Petitioner is incarcerated pursuant to a judgment entered June 16, 1998, in Erie County Court (Tills, J.), following a jury verdict convicting him of an eleven-count indictment which included three counts of rape in the first degree (N.Y. Penal Law § 130.35), three counts of sodomy in the first degree (former N.Y. Penal Law § 130.50(1)), two counts of robbery in the second degree (N.Y. Penal Law § 160.10), one count of sex abuse in the first degree (N.Y. Penal Law § 130.65), one count of kidnapping in the second degree (N.Y. Penal Law § 135.20), and one count of unauthorized use of a motor vehicle in the first degree (N.Y. Penal Law § 165.08).

On June 24, 2016, this Court granted petitioner's request to vacate a previously-imposed stay and amend his petition to add one additional claim regarding ineffective assistance of appellate

counsel.[1] The Court denied respondent's motion to dismiss and directed respondent to file a response to the petition by September 21, 2016. Respondent has now responded and petitioner has replied to that response.

## II. Factual Background and Procedural History

Petitioner's conviction arose out of a June 25, 1997 incident in which he abducted a young woman from a mall parking lot. Petitioner then tied the victim to a fence and sexually abused her over a period of approximately five hours, before she was able to escape. After a jury trial, petitioner was convicted as indicted, as outlined above. On June 16, 1998, he was sentenced, as a second felony offender, to an aggregate determinate term totaling 90 years, which was deemed a determinate term of 50 years pursuant to N.Y. Penal Law § 70.30(1)(e)(vii). The relevant procedural history in this case was recited in the Court's Decision and Order dated June 24, 2016, and that summary is incorporated herein by reference. Doc. 24 at 1-5.

On August 30, 2016, petitioner moved for a third time to stay the proceedings and amend his petition. Doc. 25. This motion, according to petitioner, seeks to "clarify the factual and legal bases of one of his seven original claims and to delete one of his seven claims from the petition." Doc. 25 at 3.

---

[1] The Court also denied petitioner's second motion to stay and amend the petition (doc. 19).

## III. Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to this petition. AEDPA "revised the conditions under which federal courts may grant habeas relief to a person in state custody." Kruelski v. Connecticut Super. Ct. for Judicial Dist. of Danbury, 316 F.3d 103, 106 (2d Cir. 2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court may grant a writ of habeas corpus under 28 U.S.C. § 2254 only if the state court's adjudication of the petitioner's claim on the merits is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or involved an "unreasonable determination of the facts" in light of the evidence presented. 28 U.S.C. § 2254(d)(2).

## IV. Discussion

### A. Petitioner's Third Motion to Stay and Amend Petition

The Court denies petitioner's most recent motion to stay and amend his petition. The Court has already allowed petitioner to stay and amend his petition once, and the latest amended petition does not add any substantial new grounds for relief. Therefore, petitioner has failed to show "good cause" for staying and amending his petition and his motion is denied. See Rhines v. Weber, 544 U.S. 269, 277-78 (2005).

**B.   Grounds Raised in the Petition**

The petition, as amended, raised grounds of (1) prosecutorial misconduct (grounds one through four of the original petition [doc. 1]); (2) ineffective assistance of trial and appellate counsel (grounds five and seven of original petition, and grounds one and three of amended petition [doc. 9]); and (3) unduly suggestive identification procedures (ground six of original petition and ground two of amended petition).

**1.   Prosecutorial Misconduct**

Petitioner raises three arguments regarding prosecutorial misconduct. First, petitioner contends that the prosecutor suborned perjury from nurse Jane Arbek, who testified regarding the collection of DNA samples from the victim; chemist Richard Spencer, who testified regarding the testing of DNA material; and Officer Micheal DiVito, one of petitioner's arresting officers. A witness perjures him or herself when "she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993).

Petitioner argues that error occurred at the trial level because Nurse Arbek testified that she took two swabs of DNA material from the victim and later corrected her testimony to say that it was actually four, not two, swabs. There was no evidence at trial, and petitioner has come forward with none, to indicate that

4

this initially mistaken testimony prejudiced petitioner in any way. Spencer's testimony at trial merely confirmed that there were four swabs. Thus, as to Nurse Arbek and Spencer, petitioner has not come forward with any evidence tending to establish that their testimony was perjurious.

Petitioner also contends that the prosecutor suborned perjury from arresting Officer DiVito, who testified that when petitioner was sitting in the back of a patrol vehicle he made the spontaneous statement, "[W]hat did she say I did?" See T. 226.[2] At the Huntley hearing in this case, see People v. Huntley, 43 N.Y.2d 175 (1977), Officer DiVito did not testify regarding this particular statement. Nevertheless, there is no indication that the statement was false, and to the extent Officer DiVito testified to any statements not noticed pretrial, there is no chance that such testimony affected the outcome of the trial given the otherwise overwhelming evidence against petitioner. See Wood v. Ercole, 644 F.3d 83, 94 (2d Cir. 2011) (describing harmless error standard); see also, e.g., Black v. Rock, 103 F. Supp. 3d 305, 320 (E.D.N.Y. 2015) (dismissing habeas petition where there was no evidence that testimony elicited by prosecutor was perjured).

Petitioner next contends that the prosecutor allowed arresting officers to present "false" physical evidence against him at trial,

---

[2] "T." references the trial transcript which was filed manually with the Court on September 21, 2016.

in the form of a shoelace. Evidence at trial established that when the victim escaped the fence to which petitioner had tied her, she brought with her one shoelace and left behind a second with which she had been bound. This shoelace was presented at trial and petitioner's arresting officers testified that it was found on petitioner following his arrest. The shoelace was matched with the shoelace the victim escaped the crime scene carrying. There is no indication whatsoever that the evidence was somehow "false." Therefore, again, petitioner has failed to establish that any prosecutorial misconduct occurred. See, e.g., Bowers v. Walsh, 277 F. Supp. 2d 208, 225 (W.D.N.Y. 2003) (dismissing habeas petition where petitioner "presented no evidence of any prosecutorial misconduct").

Finally, petitioner contends that the prosecutor withheld DNA evidence regarding one Judah Gehl, with whom the victim had had previous sexual contact. Evidence of Mr. Gehl's DNA was excluded from trial pursuant to New York's rape shield law. See CPL § 60.42. This evidence was not withheld, however; it was the subject of motion argument in court and it actually relates to petitioner's ineffective assistance of trial counsel argument, in which he contends that trial counsel was ineffective for failure to present testimony as to Gehl's DNA. As such, petitioner has not established that the prosecutor committed any misconduct with regard to Gehl's DNA evidence. See Bowers, 277 F. Supp. 2d at 225.

6

## 2.   Ineffective Assistance of Counsel

Petitioner raises various claims of ineffective assistance of trial and appellate counsel. To establish ineffective assistance of counsel at either the trial or appellate level, a defendant first must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and second, that "there is a reasonable probability that, absent the errors [by counsel], the fact finder would have had a reasonable doubt respecting guilt." Strickland v. Washington, 466 U.S. 668, 687, 695 (1984). Under Strickland, the Court is required to consider alleged errors by counsel "in the aggregate." Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).

### a.   Trial Counsel

Petitioner contends that trial counsel was ineffective for failing to investigate the chemist Richard Spencer's notes and failing to properly cross-examine Spencer. Petitioner raised this ground in his December 12, 2012 CPL § 440.10 motion, which was denied on May 20, 2013, and the Fourth Department denied leave to appeal on September 11, 2013.

The Court has reviewed this claim along with the record in this case, and finds that there is no basis in the record for concluding that counsel was ineffective for failing to "investigate" Spencer's notes and properly cross-examine him. This ground relates to petitioner's contention that the prosecutor

7

suborned perjury from Nurse Arbek and chemist Richard Spencer. As discussed above, there is no indication of any prosecutorial misconduct surrounding the testimony of these two witnesses. Additionally, there are no obvious errors in trial counsel's cross-examination of Spencer. Thus, the state court's decision on this issue was not an unreasonable application of relevant federal precedent. See 28 U.S.C. § 2254(d)(1).

### b.   Appellate Counsel

Petitioner contends that appellate counsel was ineffective for failing to raise grounds including (1) the prosecutor knowingly suborned perjury and allowed false testimony from the chemist; (2) the prosecutor failed to disclose <u>Brady</u> material; (3) petitioner's arresting officers knowingly offered false physical evidence; (4) trial counsel was ineffective for failing to investigate the chemist's notes and properly cross-examine the chemist; and (5) trial counsel was ineffective for failing to present expert witness DNA testimony as he promised the jury in his opening statement.

Appellate counsel is not ineffective for failing to brief every colorable issue on appeal; rather, counsel may focus on claims that have the best chance of winning. See <u>Jones v. Barnes</u>, 463 U.S. 745, 753 (1983) ("A brief that raises every colorable issue runs the risk of burying good arguments – those that, in the words of the great advocate John W. Davis, 'go for the

jugular[.]'"). "The failure to include a meritless argument does not fall outside the 'wide range of professionally competent assistance' to which [p]etitioner was entitled." Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001) (quoting Jameson v. Coughlin, 22 F.3d 427, 429-30 (2d Cir. 1994) and Strickland, 466 U.S. at 690)). Initially, because the Court has found that petitioner's ineffective assistance of trial counsel argument regarding the chemist lacked merit, appellate counsel cannot be faulted for failure to bring up that argument on appeal. See id.

In this case, appellate counsel submitted a substantial brief which addressed two issues: the suppression decision and the identification procedure. The Court has reviewed appellate counsel's brief, and concludes that counsel presented "a thorough, well-researched brief in which [appellate counsel] persuasively argued" petitioner's points on appeal. Jamison v. Bradt, 2011 WL 2728394, *6 (W.D.N.Y. July 12, 2011); see SR 162-203. It is clear from a review of the record that none of the arguments advanced by petitioner would have been successful on appeal.

First, petitioner's arguments that the prosecutor suborned perjury lack merit. These arguments were discussed above with relation to prosecutorial misconduct. There is no evidence that the prosecutor suborned perjury, and therefore petitioner has not, and cannot, show any prejudice stemming from their testimony. As such,

appellate counsel cannot be faulted for failing to raise the issue on appeal. See _Aparicio_, 269 F.3d at 99.

Second, petitioner contends that the prosecutor withheld DNA evidence regarding Judah Gehl, a contention which was discussed above in the context of prosecutorial misconduct. As discussed above, this argument is meritless and appellate counsel cannot be faulted for failing to raise it. See _Aparicio_, 269 F.3d at 99. Third, petitioner argues that his arresting officers, Officers DiVito and Timothy Pringle, presented false physical evidence in the form of a shoelace. This argument, which was addressed above in relation to prosecutorial misconduct, likewise lacks merit. Therefore, appellate counsel was not ineffective for failing to raise it. See _id._

Finally, petitioner argues that trial counsel was ineffective for failing to present expert witness DNA testimony as he promised the jury in his opening statement, and that appellate counsel was correspondingly ineffective for failing to raise this issue on appeal. Although counsel mentioned the possibility of a DNA expert in his opening statement, his failure to present one during trial did not render his representation constitutionally ineffective. Taken in the aggregate, trial counsel presented a coherent defense, was active at all stages of trial including pretrial hearings and motion argument, and presented overall effective opening and closing statements to the jury. Upon review of the record,

therefore, the Court concludes that petitioner received effective assistance under <u>Strickland</u>. See <u>Lindstadt</u>, 239 F.3d at 199 (citing <u>Strickland</u>, 466 U.S. at 687, 695)).

### 4. Identification Procedure

Petitioner contends that the identification procedure used in this case was unduly suggestive. Petitioner raised this argument on direct appeal, contending that the Assistant District Attorney and victim-witness assistant employed by the prosecutor behaved in such a way as to suggest petitioner as the perpetrator of the crime. Petitioner was presented to the victim in a line-up during which all six of the men were directed to speak. After failing to identify the petitioner on the first line-up, the victim was presented with a second line-up. Initially, the victim did not identify any of the men, but she eventually identified the petitioner by his voice, and in particular, his distinctive lisp.

Petitioner's counsel was present at the line-up and made no objections. At the suppression hearing, petitioner's counsel conceded that the line-up was not unduly suggestive.  On appeal, the Fourth Department summarily affirmed. See <u>People v. Sherrod</u>, 82 A.D.3d 1624 (4th Dep't 2011), <u>lv denied</u> 16 N.Y.3d 889. This summary order was an adjudication on the merits, and thus subject to the "unreasonable application" test of § 2254(d)(1). See <u>Mance v. Miller</u>, 2002 WL 377533, *3 (S.D.N.Y. Mar. 8, 2002).

In affirming petitioner's judgment of conviction, the Fourth Department necessarily found that his argument regarding the identification was unpersuasive. This finding was not an unreasonable application of applicable federal precedent. The Fourteenth Amendment guarantees criminal defendants the right to be free from pretrial identification procedures "that are so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968). Nevertheless, even if a pretrial identification procedure was unduly suggestive, a witness may identify the defendant in court if the in-court identification is independently reliable. See United States v. Tortora, 30 F.3d 334, 338 (2d Cir. 1994). Factors used to determine independent reliability include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [the witness'] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." United States v. Wong, 40 F.3d 1347, 1359 (2d Cir. 1994) (citations omitted).

In this case, the victim identified petitioner during the Wade/Huntley hearing and at trial. Her identification, apart from the line-up, was independently reliable because she had the opportunity to observe, and listen to, petitioner from

approximately 9:35 p.m. on June 25, 1997 through approximately 5:00 a.m. on June 26, 1997. She testified that she did not have a "single doubt" regarding the identity of her attacker. T. 142. Thus, given the facts of this case, the Fourth Department's rejection of petitioner's identification argument was not an unreasonable application of applicable federal precedent. See U.S.C. § 2254(d)(1).

## V.   Conclusion

For the foregoing reasons, petitioner's motion to stay and amend his petition (doc. 25) is denied, his request for writ of habeas corpus is denied, and the petition as amended (docs. 1, 9) is dismissed. Because petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. The Clerk of the Court is requested to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**


**S/Michael A. Telesca**
_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:      November 8,  2016
            Rochester, New York.